UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

UNITED STATES OF AMERICA

v.                                          Case No.2:22-cr-25-TPB-KCD

JEFFREY HOLCOMBE
_____/

## SENTENCING MEMORANDUM AND MOTION FOR VARIANCE

The defendant, JEFFREY HOLCOMBE, by and through undersigned counsel, files this Sentencing Memorandum and Motion for Variance, and in support states as follows:

## Introduction

On April 3, 2021, Mr. Holcombe was arrested in Naples, Florida on charges from the Southern District of Florida. At age 49, this was the first arrest in his life. After preliminary proceedings in this division, Mr. Holcombe was transferred to the Southern District to face these charges. The basis of the Southern District indictment was on-line communication with an underage female in which he requested she take pornographic photographs and provide them to him. The first images were provided in May 2020. *United States v. Holcombe,* case 1:21-cr 202161-RAR (S.D Fla). Doc. 3. In June of 2020, the matter was reported to authorities and, thereafter, until February, 2021, an undercover agent assumed the on-line identity of the underage female. *Id.* Mr. Holcombe never met the minor in-person. Mr. Holcombe entered a

guilty plea to production of child pornography in violation of 18 U.S.C. 2251(a) and (e), and on January 12, 2022 was sentenced to 230 months imprisonment followed by 25 years of supervised release. No appeal was filed and time to seek collateral relief has run. Mr. Holcombe's current release, according to the Bureau of Prisons website, is August 3, 2037. He will be 66 years old.

When arrested, Mr. Holcombe was found to be living with a 17 year old female identified herein as "SF." Later searches of their respective electronic devices revealed videos of their sexual encounters. These videos had been saved on the devices of both Mr. Holcombe and SF. PSR ¶¶ 9-10.  Some of the videos had been taken at a hotel in the Tampa Bay area, where Mr. Holcombe had previously lived. The videos were taken when SF was 16 and 17 years old. In a subsequent statement, SF acknowledged the relationship and indicated they ultimately intended to get married.

After Mr. Holcombe had been sentenced on the Southern District matter and was serving his lengthy sentence in the Bureau of Prisons, the Government brought the instant indictment relating to SF, charging Mr. Holcombe with a single count of Production of Child Pornography also in violation of 18 U.S.C. §2251(a) and (e). These allegations covered the time period of July 18, 2020 to March 3, 2021. Doc. 1. As he had in the Southern District, Mr. Holcombe entered a guilty plea. The

United States Probation Office has prepared a Pre-Sentence Report (PSR) which concludes that the advisory guideline range is the 360 month statutory maximum.

While Mr. Holcombe has an objection to the guideline calculation, he maintains, regardless of the Court's ultimate guideline determination, and pursuant to Title 18 U.S.C. § 3553, and *United States v. Booker*, 125 S. Ct. 738 (2005), the Court can impose a sentence that is both measurably below the guideline range, and concurrent with the sentence from the Southern District, which will be sufficient to achieve all legitimate purposes of sentencing.

**A. Objection to the "Pattern" Enhancement.**

The one disputed guideline issue is the five-level and three criminal history category enhancement pursuant to USSG §4B1.5(b)(1) based on the accusation that Mr. Holcombe engaged in a "pattern" of "prohibited sexual activity." PSR ¶ 28. It is not clear whether the proposed enhancement includes the Southern District case or is limited to the ongoing relationship with SF. Mr. Holcombe of course recognizes that the Eleventh Circuit in *United States v. Fox,* 926 F.3d 1275, 1279 (11th Cir. 2019), decided June 13, 2019, relying entirely on a construction of the guideline *commentary* in USSG § 4B1.5(B)(1) comment. n.4(B)(i), held that the pattern enhancement includes sexual conduct involving the same minor on at least two occasions. Further, *Fox* held, also based on the commentary, USSG §4B1.5 (b)(1)

requires only "events that are independent and distinguishable from each other. whether ongoing, related, or random." *Id.* at 1280.

Reliance on the guideline commentary, however, is problematic in light of the subsequent decisions by the United States Supreme Court in *Kisor v. Wilkie,* 139 S. Ct. 2400, 2014-2015 (2019)(decided two weeks after *Fox,* clarifying that a federal agency's interpretation of its own regulations is entitled to deference "only if a regulation is genuinely ambiguous"), and the Eleventh Circuit in *United States v. Dupree,* 57 F.4th 1269, 1275-1276 (11th Cir. 2023) *en banc* (applying *Kisor* to the federal sentencing guideline commentary).[1]

*Kisor* made clear that for *Auer* deference[2] to apply, "a court must exhaust all the 'traditional tools' of construction," *id*. at 2415 (*quoting Chevron U.S.A. Inc. v. Nat. Res. Def. Council Inc.,* 467 U.S. 837, 843 n.9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)), and determine that the regulation is "genuinely ambiguous," *id.* at 2414. Under this approach, a court must consider the "text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on." *Id*. at 2415.

---

[1] The Supreme Court, of course, had previously equated the guideline commentary, promulgated by the Sentencing Commission to an agency's interpretation of its own legislative rules. *See Stinson v. United States*, 508 U.S. 36, 44, 113 S. Ct. 1913 (1993).

[2] *Auer v. Robbins,* 519 U.S. 452 (1997) (agency's interpretation of its own regulations is entitled to deference unless the regulation is plainly erroneous or inconsistent with the regulation).

*Dupree* further called into question the precedential authority of earlier cases relying on the guideline commentary. 57 F.4[th] at 1280 ("[t]o the extent this holding conflict with prior precedent, that precedent is overruled"). *See also United States v. Adair,* 38 F.4th 341, 349 (3d Cir. 2022)(prior case law that had afforded *Auer* deference to the Commission's interpretive commentary without engaging in the *Kisor* process does not automatically retain its controlling force).

In *Dupree*, the court held that as there was no ambiguity in USSG §4B1.1(a) definition of "controlled substance offenses" for career offender purposes in that it did not include inchoate offenses as predicates, the court could not rely on the commentary which provided that inchoate offenses were included. *See also United States v. Riccardi*, 989 F.3d 476, 485 (6th Cir. 2021)(declining to enforce the commentary which provided a mandatory minimum $ 500 loss amount under USSG § 2B1.1 for each unauthorized access device in light of *Kisor*)*; and United States v. McKinney*, --- F. Supp. 3d ---, 2022 WL 17547467, at *8 (E.D. Mich. Dec. 9, 2022) ("loss" under USSG 2B1.1(b) did not include "intended loss" notwithstanding the commentary).

Here, the guideline text simply says in relevant part, that the enhancement should be applied when "the defendant engaged in a pattern of activity involving prohibited sexual conduct." USSG § 4B1.5(b)(1). The commentary, however, dramatically expands the reach of this provision in that it states "a defendant [has]

engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant [has] engaged in prohibited sexual conduct with a minor."

Rather than undertaking a statutory construction analysis of the *guideline* provision, as required by *Kisor* and *Dupree*, the Eleventh Circuit in *Fox* instead engaged in a statutory construction analysis of the *commentary*. *See* 57 F.4th at 1279 ("because the plain meeting of Application Note 4(B)(i) is clear, it is not imperative what we examine the amendment history for guidance"). This, of course, begs the question.

"Pattern" has been defined as "a reliable sample of traits, acts, tendencies, or other observable characteristics of a person, group, or institution." *Merriam, Webster* Dictionary, definition 7 *https://www.merriam-webster.com/dictionary /pattern.* Courts have also sought to define the term. "In normal usage, the word 'pattern' would also be taken to require not simply a multiplicity of predicates, but rather predicates arranged or ordered by reason of the relationship they bear to each other or to some external organizing principle. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 230 (1989), "[I]n common parlance two of anything do not generally form a ''pattern.'" *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985); " 'Pattern or practice' is not defined by a specific number of offenses; rather, the term suggests a standard or routine way of operating." *Miranda v. Ocwen Loan Servicing, LLC*,

148 F. Supp. 3d 1349, 1355 (S.D. Fla. 2015)(citations omitted); *July v. Board of School Commissioners,* 291 F.R.D 653, 657 (S.D. Ala. 2013)("pattern of practice" for purposes employment discrimination under Title VII means that "discrimination is the company's standard operating procedure.").

Mr. Holcombe's offense does not constitute a "pattern" in the ordinary sense. Rather, it involved a single relationship over a relatively short period of time.  As noted, he had no  prior criminal record. Nor is there any indication of any criminal conduct, much less similar conduct before his involvement in the Southern District case. At the very least, to constitute a "pattern" there should be multiple unrelated events which bear on future conduct.

In addition to an expansion of the term "pattern," beyond its normal meaning, the commentary created a definition of "prohibited sexual conduct" out of whole cloth. Application note 4(A)(i) provides "prohibited sexual conduct" means any of the following: (i) any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B)[3]. It also expanded the definition to specifically include Production of Child Pornography. Comment n. 4(A)(ii).  The inclusion of "Production of Child Pornography" in the

---

[3] 18 USC § 2426(b) Definitions.—provides: -
   (1) the term "prior sex offense conviction" means a conviction for an offense—
(A) under this chapter, chapter 109A, chapter 110, or section 1591; or
(B) under State law for an offense consisting of conduct that would have been an offense under a chapter referred to in subparagraph (A) if the conduct had occurred within the special maritime and territorial jurisdiction of the United States. . ..

commentary of "Prohibited Sexual Conduct" presents the same situation as *Dupree*. There is nothing in the guideline text what brings Mr. Holcombe's offense within the reach of §4B1.5. This is purportedly done exclusively because it is enumerated in commentary.

Moreover, any doubt about the meaning of "pattern," or "prohibited sexual conduct" should be resolved under the rule of lenity. *See United States v. Nasir,* 17 F.4th 459, 471–72, 474 (3d Cir. 2021) *(en banc)*(Bibas, J., concurring); *United States v. Campbell,* 22 F.4th 438, 446 (4th Cir. 2022);  Indeed, "[t]he rule of lenity is one of the oldest and most traditional tools of statutory interpretation." *Romero v. Sec'y U.S. Dep't of Homeland Security*, 20 F.4th 1374, 1383 (11th Cir. 2021); *see United States v. Wiltberger,* 18 U.S. 76, 95 (1820) ("The rule that penal laws are to be construed strictly[ ] is perhaps not much older than construction itself.").  Thus, under the rule of lenity, the Court should construe the term "pattern" as requiring more than the commentary relied on in *Fox* requires.

**B. Factors Relevant to an Appropriate Sentence under 18 U.S.C. § 3553(a)**

After calculating the sentencing guidelines, the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Talley*, 431 F.3d 784, 787-88 (11th Cir. 2005). These familiar factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the seriousness of the offense; the need to promote respect for law; just punishment; deterrence;

protection of the public; providing the defendant with needed educational or vocational training or medical care; the kinds of sentences available; the Sentencing Guidelines range; pertinent policy statements of the Sentencing Commission; the need to avoid unwanted sentencing disparities; and the need to provide restitution to victims. While it is true, of course, that courts must consider the guidelines, it is equally true that sentencing courts may take into account policy disagreements with the guidelines. *See Kimbrough v. United States,* 552 U.S. 85, 91, 128 S. Ct. 558, 564 (2007) ("[t]he judge may determine, however, that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing.").

## C. Application of the Section 3553 Factors to This Case.

Mr. Holcombe maintains that the sentence previously imposed in the Southern District of Florida is sufficient to achieve all reasonable objective of sentencing in this case as well. In short, he respectfully urges the Court to impose the same 230 month sentence to run concurrently with the Southern District case.

### 1.  A Concurrent Sentence is Appropriate

The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a). 18 U.S.C 3584(b). Further, USSG § 5G1.3. *Imposition of a Sentence on a Defendant Subject*

9

*to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment* addresses on an advisory basis whether multiple sentences should run concurrently or consecutively provides:

(a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

(b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:

(1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

(2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

(c) If subsection (a) does not apply, and a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment.

(d) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or

> consecutively to the prior undischarged term of imprisonment to
> achieve a reasonable punishment for the instant offense.

Here, the conduct occurred before Mr. Holcombe's arrest and conviction in the Southern District matter, was committed in the Middle District of Florida, and occurred during an over-lapping time frame. Thus, subsection (a) advising consecutive time does not apply. Ultimately, the guidance from this provision is found in subsection (d) which simply directs the Court to impose the sentence either concurrently or consecutively to achieve a reasonable sentence. The Eleventh Circuit similarly recognized that a "court's discretion in determining whether a consecutive or concurrent sentence is appropriate is tempered by the statutory requirement that the sentencing court consider the factors listed in 18 U.S.C. § 3553(a)." *United States v. Ballard,* 6 F.3d 1502, 1505 (11th Cir. 1993).

Given these considerations, Mr. Holcombe respectfully maintains that the sentence in this case should run concurrently with the existing sentence. Certainly, the Court could impose a sentence somewhat longer concurrent sentence to account for the separate conduct. This might be appropriate had the Southern District sentence been significantly shorter. However, Mr. Holcombe maintains that the already imposed 230 month sentence is sufficiently lengthy to account for the §3553 factors for both cases. While no one is defending Mr. Holcombe's otherwise consensual relationship with this much younger individual, indeed it's a serious

boundary violation, the point must still be made that SF was above the age of consent in the majority of states.[4]

As Mr. Holcombe observed in his letter response to the PSR, his conduct in both cases occurred during an over-lapping time-period.  Had the offenses been brought before the Court in the same indictment or different indictments and the same sentencing hearing, a single guideline calculation could have been provided which would have taken into account both cases. The matters were only separated because two contiguous counties are in separate districts. Significantly, recognizing the severity of the 230 month sentence, and despite a government request for 294 months (24 ½ years), the court in the Southern District determined that a variance was appropriate from a guideline range of 262-327 months. (Sentencing Transcript Pgs. 19, 21, 31).

## 2.  <u>Mr. Holcombe's History and Characteristics</u>

Mr. Holcombe had no criminal history and, in fact, was an exceptionally productive member of the community until his late 40's. He does not have substance abuse issues. PSR ¶¶ 54-58. He was born and educated in Georgia, ultimately

---

[4]   *See* https://www.populationu.com/gen/age-of-consent-by-State.  Seemingly without regard to geography or culture, the states where the age of consent is sixteen are: Alabama, Alaska, Arkansas, Connecticut, District of Columbia, Georgia, Hawaii, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Vermont, Washington, West Virginia, and Wyoming,

obtaining an Associate's Degree in electronics from Georgia Technical College. PSR 60. He relocated first to Tallahassee and then to Tampa where he lived for most of his adult life. PSR ¶ 45.

Mr. Holcombe enlisted in the U.S. Army National Guard when he was 18 years old.  He served in the Guard from 1989-1999. PSR ¶ 62. He was deployed during Desert Storm. *Id.*  He received an Army Achievement medal twice and a Foreign Service medal, before being honorably discharged. *Id.*

During the twenty-five years he lived in Tampa, he was gainfully employed in the automotive industry. PSR ¶¶ 65-66.  In February, 2020, he  moved to Naples for a position as service manager for Porsche of Naples. PSR  ¶ 64.

Holcombe has been married and divorced twice. The first only lasted a few months. *Foris* Pg. 3. His second marriage resulted in his two children, now ages 16 and 19. *Id.*

Mr. Holcombe was raised in an intact home. While he was the only child of his parents together, he does has older half-siblings from both parents. Mr. Holcombe was very close to his mother, who passed away in March, 2020. PSR ¶ 41. This, not coincidentally, immediately preceded his conduct both cases. Mr. Holcombe reflected to Dr. Foris "When my mom died, I think a part of me died too. She's the only one I really had a relationship with at the time." *Foris* Pg 4. He currently has a close relationship with his father, who is now suffers from terminal cancer.

However, Mr. Holcombe indicates that his father had been emotionally abusive and an alcoholic throughout the defendant's minor years. PSR ¶ 44. Mr. Holcombe attributes his relative abstention from alcohol, in part, to his father's alcoholism. PSR ¶54.

While imprisoned, Mr. Holcombe has assumed responsibility for preaching and teaching Bible Study to fellow inmates. *Foris* Pg. 4. He was incarcerated at that Charlotte County Jail during Hurricane Ian, and has been moved to the *old* Glades County Jail, where the conditions of confinement, to be kind, are substandard.

### 3.  Nature and Circumstances of the Offense

While again no justification for the conduct at issue here is being offered, this case does not present additional aggravating circumstances that courts have found worthy of an especially lengthy sentence.  These factors include particularly young age of the minor(s), multiple victims, a family relationship with the minor(s), or the exploitation of an existing position of authority. *See e.g. United States v. Irey,* 612 F.3d 1160,  1161 (11th Cir. 2010)( 30 year sentence for a defendant who over a period of four of five years visited numerous overseas brothels where he sexually abused underage girls; some of whom were only four, five, or six years old); *Fox* 926 F.3d at 1277 (30 year sentence for sexually abusing the defendant's step-granddaughters, ages 9 and 11, almost nightly for approximately a year);  *United States v. Latimer*, 828 F. App'x 673, 674 (11th Cir. 2020) (25 year sentence where the defendant

14

sexually molested his own daughter to produce child pornography); *United States v. Broxmeyer* 699 F.3d 265 (2d Cir. 2012)(30 year sentence for a former high school athletic coach convicted of producing child pornography with respect to teenage girls under his tutelage).

The proposed guideline sentence here, which calls for the sentence at the statutory maximum, fails to account for the distinction between this case and the cases involving these aggravating factors.

## 4. **Sufficient punishment For the Offense**

18 USC § 3553(a)(2) provides the need for a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and affords adequate deterrence.

Supporting his contention that the sentence imposed by the Southern District is sufficient punishment for the conduct in both cases, Mr. Holcombe has already served two years of the sixteen years he is expected to serve for his conduct which occurred in 2020 and 2021. Further, even a concurrent sentence not exceeding the sentence imposed in the Southern District would likely not be a *co-terminus*. While it is hard to predict precisely how the Bureau of Prisons will award credit, it does not seem that Mr. Holcombe would get credit for any time preceding his appearance in this matter as that time would be credited solely to the Southern District case. Even should the Court impose the sentence suggested by Mr. Holcombe, 230 months

concurrent with the Southern District sentence, it is anticipated there will likely be some additional time left to serve after the Southern District sentence is completed.

### 5.  Protection of the Public

Generally, § 3553(a)(2)(C) which directs the Court to consider the need to protect the public from further crimes of the defendant is particularly important in cases of this nature. However, in light of the length of the Southern District sentence, Mr. Holcombe's age, lack of prior record, and evidence that he has a negligible risk to re-offend, this is not a real concern.

As noted above, Mr. Holcombe's current release date is fourteen years away. This is after already serving approximately two years. While Dr. Foris will further discuss her findings at the sentencing hearing, at age 66, Mr. Holcombe's risk to re-peat his offending conduct will be statistically miniscule. Additionally, Dr. Foris report indicates that Mr. Holcombe does not have a sexual interest in pre-pubescent minors.

Finally, the Southern District sentence provides for 25 years of supervised release.  Effectively this is life supervision as, given the release date, he would remain on supervised release into his nineties. It is anticipated this Court will impose at least a similar period of supervision.  The Southern District sentence further provides for a prohibition against computer use, other than with the permission of the Probation Office. Under the circumstances, the public is well-protected.

**6.  The advisory guidelines and pertinent policy statements**

18 U.S.C. §§ 3553(a)(4) and (5) require the Court to consider the applicable sentencing guideline range, as well as pertinent policy statements by the United States Sentencing Commission under Title 28 U.S.C. § 994(a)(1). Of course, the weight to be given the guidelines is controlled by the extent that the guidelines are consistent with remainder of the §3553 factors.

Were the Court to over-rule Mr. Holcombe's objection to the pattern enhancement, the guidelines would call for a sentence which would well-exceed a reasonable sentence. Applying the "pattern" enhancement" as broadly as the commentary suggests, casts such a wide net as to render the enhancement virtually meaningless.   In this case, a second act with the same minor results in an extreme and outsized increase from level 33 category II, all the way to the statutory maximum.

**7.  Unwarranted Sentencing Disparities**

18 U.S.C. § 3553(a)(6) directs the Court to avoid unwarranted sentencing disparities.

Sentencing courts have seemingly recognized the distinction between child pornography production cases involving very young minors compelled to engage in sexual activity, and circumstances such as we have here where a defendant takes otherwise consensual photographs or video images of a teenager. *See e.g., United*

*States v. Hooper,* 338 F. App'x 866, 867 (11th Cir. 2009)(190 month sentence where the defendant  had a long-term sexual relationship with a fourteen year old, whom he impregnated, after sustaining a prior conviction for a forced  sexual battery on a 17–year old), *United States v. Laursen*, 847 F.3d 1026, 1031 (9th Cir. 2017)(15 year sentence had been imposed where the forty-five year old man took consensual nude photographs involving himself and a 16 year old girl with whom he was in a relationship); *United States v. Ortiz-Graulau*, 526 F.3d 16, 21 (1st Cir. 2008)(15 year sentence had been imposed where the 38 year old defendant produced images of his sexual contact with his live-in 14 year old girlfriend); *United States v. Bach,* 400 F.3d 622, 624, 628 (8th Cir. 2005)(180 month sentence had been imposed on a 41 year old defendant -concurrent with 120 months on various other child pornography counts- for producing videos of him engaging in sexual conduct with a sixteen year old boy); *United States v. Puglisi*, 458 F. App'x 31, *3 (2d Cir. 2012)(15 year sentence as a downward variance for production and attempted production of child pornography involving a sixteen year old).

In a different context, sentence has been imposed in the range suggested by Mr. Holcombe for arguably more severe conduct. *See United States v. Gray*, 2023 WL 570996, at *4 (11th Cir. January 27, 2023)(20 year sentence was substantively reasonable for production and attempted production of child pornography, possession of child pornography, and cyber-stalking where the guideline range was

life and the sentence was below the statutory maximum despite the fact that the defendant received images from multiple minors and threatened them if they did not provide more images).

## **CONCLUSION**

Mr. Holcombe maintains that under the unusual circumstances in this case, a sentence of 230 months, concurrent with his existing lengthy sentence from in the Southern District of Florida, will be sufficient to meet all of the sentencing considerations set forth in 18 U.S.C.§ 3553(a).

Respectfully submitted,

A. Fitzgerald Hall
Federal Defender
Middle District of Florida

/s/ Russell K. Rosenthal
Russell K. Rosenthal, Esq.
Florida Bar No. 0319244
Assistant Federal Defender
2075 West First Street, Suite 300
Fort Myers Florida 33901
Telephone: 239 334-0397
Facsimile: 239 334-4109

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of April 2023, a true and correct copy of the foregoing has been filed in this court and a copy was forwarded by electronic mail to Yolande Viacava, Assistant United States Attorney, 2110 First Street, 3-137, Fort Myers, Florida 33901.

s/ Russell K. Rosenthal
Russell K. Rosenthal, Esq.